IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-41414

Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN ANTONIO HERNANDEZ-HERNANDEZ

Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas
(L-00-CR-192)

---

September 6, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Juan Antonio Hernandez-Hernandez appeals his conviction for conspiracy to possess and possession with intent to distribute in excess of 100 kilograms of marijuana. Hernandez argues that the district court should have suppressed the evidence obtained in a stop of his vehicle near the Mexican border because federal agents lacked reasonable suspicion that the vehicle was involved in

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

illegal activity.  We agree with the district court that the federal agents had reasonable suspicion.

I

On January 26, 2000, at 12:15 p.m., Laredo North Station Border Patrol agents received a dispatch that hidden seismic sensors had been triggered within the 5 D Ranch.  The 5 D Ranch is located in the "Mines Road" area, which is a 5-7 mile stretch between the San Isabelle Creek and the Columbia Bridge.  The 5 D Ranch borders the Rio Grande River, which separates Texas from Mexico.  Border Patrol Agent Darren Louck proceeded to the 5 D Ranch and set up surveillance of the main gate.

Within thirty minutes, Agent Louck saw a black Dodge pickup truck arrive at the main gate.  The Dodge had been customized to ride lower to the ground and had wide tires, which Louck concluded was not the type of vehicle associated with agricultural work on the ranch.  Louck also concluded that the Dodge did not belong to ranch employees – he was familiar with the ranch workers and their three vehicles.  Louck's suspicion was additionally aroused by the fact  that agricultural traffic always used another gate closer to the fields and that no crops were being grown at this time.  Louck saw the driver of the Dodge unlock the gate (which had a combination lock on it) and drive inside.

2

Sensor activity inside the 5 D Ranch continued for the next 30 minutes. Agent Louck then observed two men in a black Ford pickup truck approach the main gate to leave the ranch. Agent Louck also did not recognize the Ford as one of the vehicles belonging to employees of the ranch. Close behind the Ford was the Dodge, which followed the Ford out of the gate, whereupon the driver of the Dodge closed the gate, and both trucks drove South on Mines Road.

His suspicion aroused by the vehicles traveling as a pair and not belonging to anyone who worked at the ranch, the proximity of the ranch to the border, the seismic sensor warnings, and the large amount of drugs that had been seized on this particular stretch of road over the last several months, Agent Louck communicated his observations to his supervisor, Agent Rick Martinez. Martinez then stopped the Ford to conduct an immigration inspection. The occupants of the Ford provided Martinez with a story about their business at the ranch which Martinez did not believe. Subsequently the Dodge was stopped by two other Border Patrol agents and Martinez. The agents saw marijuana in plain view in the back seat of the truck, and proceeded to seize the marijuana and arrest Hernandez. At this time, the Ford drove past and Hernandez identified its occupants as the men who had hired Hernandez to transport the marijuana. The two occupants of the Ford were also arrested.

Hernandez was tried before the court on stipulated facts. Hernandez moved pretrial for suppression of all evidence obtained

as a result of the Border Patrol stop of his vehicle.  The district court overruled the motion following a hearing.  Hernandez was convicted of conspiracy possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B) and with possession with intent to distribute approximately 1340 pounds of marijuana in violation of 21 U.S.C § 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.  He now appeals his conviction.

II

We review the district court's finding that the stop was justified by reasonable suspicion *de novo*.[1]  We view evidence from the suppression hearing in this case in the light most favorable to the Government.[2]

Border Patrol agents may stop a vehicle during a roving patrol without violating the Fourth Amendment's reasonableness requirement when the agents "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion..." that the vehicle is being employed in illegal activities, such as the transportation of illegal aliens.[3]  We have

---

[1] *United States v. Chavez-Chavez*, 205 F.3d 145, 147 (5th Cir. 2000).

[2] *Id.*

[3] *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).

4

held that Border Patrol agents can consider several factors in deciding whether to stop a vehicle, including: "(1) characteristics of the area where the vehicle is encountered; (2) proximity to the border; (3) the usual traffic pattern on the road; (4) previous experience with criminal activity; (5) information about recent criminal activity in the area; (6) the driver's behavior; (7) the appearance of the vehicle, its type and whether it appears loaded; and (8) the number, appearance, and behavior of the passengers."[4]

Utilizing these factors, and viewing the evidence in the light most favorable to the Government, we believe that the Border Patrol agents had reasonable suspicion to stop Hernandez's vehicle. Hernandez urges us to reverse the district court in part because his knowledge of the combination on the lock to the gate provided some objective evidence that he was authorized to enter the ranch. In contrast, Hernandez notes, we found reasonable suspicion in *Inocencio* when "the ranch owners had specifically identified the vehicles that were authorized to access the private ranch road."[5]

Hernandez misses the mark. "Reasonable suspicion ... is not limited to an analysis of any one factor."[6] In fact, in *Inocencio* we expressly noted that one such factor, proximity to the border,

---

[4] *Chavez-Chavez*, 205 F.3d at 148 (citing *United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1995)).

[5] *Inocencio*, 40 F.3d at 723.

[6] *Id.* at 722.

was absent.[7]  Nevertheless, we held that this was not dispositive and that the federal agents in that case had reasonable suspicion. While Hernandez points to certain factual dissimilarities between this case and *Inocencio*, this ignores that other factors weigh more heavily in favor of reasonable suspicion in this case, such as the seismic sensor alerts and the proximity of the 5 D Ranch to the border.

III

For these reasons, Hernandez's conviction is AFFIRMED.

---

[7] *Id.* at 723.